IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| BRIAN GILLESPIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  06-CV-3048 |
| | ) |
| JAMES G. COX, in his Official and Individual Capacity, | ) |
| MAJOR ROSE, in his Official and Individual Capacity | ) |
| and UNKNOWN and UNNAMED OFFICIALS at the | ) |
| LOGAN CORRECTIONAL CENTER, in their Official | ) |
| and Individual Capacity, | ) |
| | ) |
| Defendants. | ) |

<u>MOTION TO TRANSFER VENUE</u>

NOW COMES the Plaintiff, BRIAN GILLESPIE, by and through his attorney, MARVIN

GERSTEIN, and submits his Motion to Transfer Venue and supporting Memorandum of Law,

and states as follows:

1.      On March 3, 2006 the Honorable Judge Harold A. Baker entered an order on his

own motion in the United States District Court, Central District of Illinois, Urbana Division that

transferred Plaintiff BRIAN GILLESPIE's civil action to the United States District Court, Central

District of Illinois, Springfield Division.

2.      Pursuant to Title 28, United States Code, Section 1404(b), Plaintiff BRIAN

GILLESPIE moves that the above-entitled action be transferred in the interest of justice and for

the convenience of the parties to the United States District Court for the Central District of

Illinois, Urbana Division, where the action was originally and properly brought.

3.      This motion is made on the following grounds:

a.      That the events giving rise to the above-entitled action occurred within the

Central District of Illinois;

b.      That venue is proper in the Urbana Division;

        c.      That no Defendant, witness or any party resides within the boundaries of the Springfield Division;

        d.      That no Defendant has objected to venue in the Urbana Division; and

        e.      That the Plaintiff, BRIAN GILLESPIE, does reside within the boundaries of the Urbana Division, as do his anticipated witnesses as attached hereto.

WHEREFORE, the Plaintiff, BRIAN GILLESPIE, by and through his attorney, MARVIN GERSTEIN, moves this Honorable Court for an Order of this Honorable Court transferring Plaintiff BRIAN GILLESPIE's above-entitled civil action to the United States District Court for the Central District of Illinois, Urbana Division.

DATED:     April 23, 2006        Respectfully submitted,

BY:    s/Marvin Gerstein
        Marvin Gerstein Bar Number:  0942162
        Attorney for Plaintiff
        Marvin Gerstein Attorney at Law
        803 South Grove Street
        Urbana, Illinois  61801
        Telephone:  217/367-8734
        Email:  MiraG60@aol.com

LIST OF WITNESSES FOR PLAINTIFF

1.     Brian Gillespie, Plaintiff
       2607 South Nottingham Court
       Champaign, Illinois  61821

       Will testify as to James G. Cox's refusal to fill his orthotic prescription and Major Rose's refusal to fill his orthotic prescription.

2.     Patti Gillespie
       2607 South Nottingham Court
       Champaign, Illinois  61821

       Mother will testify at denial of efforts to seek filling of Plaintiff Brian Gillespie's orthotic prescription and impact upon Plaintiff Brian Gillespie.

3.     John Gillespie
       2607 South Nottingham Court
       Champaign, Illinois  61821

       Father will testify at denial of efforts to seek filling of Plaintiff Brian Gillespie's orthotic prescription and impact upon Plaintiff Brian Gillespie.

4.     Kimberly Eickmeier, DPM
       Christie Clinic Association
       1801 West Windsor Road
       Champaign, Illinois  61821

       Will testify that she prescribed the orthotic prescription, its need and importance and the permanent injury to Plaintiff Brian Gillespie as a result of it not being filled.

5.     James G. Cox (former Warden, Logan Correctional Center)
       3955 West Russell Road
       Las Vegas, Nevada  89109

       No longer employed by State of Illinois Department of Corrections.

6.     Major Rose (former Officer, Logan Correctional Center)
       10128 South Eberhart Avenue
       Chicago, Illinois  60628-2224

       No longer employed by State of Illinois Department of Corrections.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| BRIAN GILLESPIE,                                          ) | |
|                                                           ) | |
|    Plaintiff,                                             ) | |
|                                                           ) | |
|        v.                                                 ) | Case No.  06-CV-3048 |
|                                                           ) | |
| JAMES G. COX, in his Official and Individual Capacity,    ) | |
| MAJOR ROSE, in his Official and Individual Capacity       ) | |
| and UNKNOWN and UNNAMED OFFICIALS at the                  ) | |
| LOGAN CORRECTIONAL CENTER, in their Official              ) | |
| and Individual Capacity,                                  ) | |
|                                                           ) | |
|    Defendants.                                            ) | |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO TRANSFER VENUE

**Introduction**

The Plaintiff, Brian Gillespie, in his  First Amended Civil Complaint at Law, names James G. Cox and Major Rose as the Defendants.  James G. Cox now resides in Las Vegas, Nevada, and Major Rose resides in Chicago, Illinois.  The Defendants are being sued under 42 USCA §1983 for their negligent acts under color of law, which took place within the boundaries of the United States District Court for the Central District of Illinois.  Since the events giving rise to Plaintiff Brian Gillespie's cause of action occurred within the boundaries of the Central District, the original complaint was properly filed in the Urbana Division of the Central District.

On March 3, 2006 the Honorable Judge Harold A. Baker entered an order on the court's own motion transferring Plaintiff Brian Gillespie's civil action from the Urbana Division to the Springfield Division.  The court's only reason for the transfer is that the events giving rise to the civil action occurred at Logan Correctional Center of Logan County, Illinois, which is in within the boundaries of the Springfield Division.

However, no Defendants or witnesses reside within the boundaries of the Springfield Division, and the only remaining evidence within those boundaries is documents at Logan Correctional Center.  Yet, the Plaintiff, Brian Gillespie, resides within the boundaries of the Central District, Urbana Division, as do his main witnesses.

### Issue Statement

Should the Court grant Plaintiff Brian Gillespie's Motion to Transfer Venue from the Springfield Division, where no party or witness resides, to the Urbana Division where the Plaintiff's claim was originally and properly filed?

### Argument

THE COURT SHOULD GRANT PLAINTIFF BRIAN GILLESPIE'S MOTION TO TRANSFER HIS CIVIL ACTION TO THE URBANA DIVISION BECAUSE VENUE IN THE URBANA DIVISION IS PROPER UNDER 28 USCA §1391 AND MORE CONVENIENT TO THE PARTIES THAN THE SPRINGFIELD DIVISION.

I.    <u>The Central District, Urbana Division was a proper venue for Plaintiff's original complaint.</u>

Under 28 USCA §1391(b) a civil action may be brought in a judicial district in which a substantial part of the events giving rise to the claim occurred.  The Defendants' negligent acts took place at the Logan Correctional Center in Lincoln, Illinois.  Lincoln, Illinois is in Logan County, which is within the boundaries of the United States District Court for the Central District of Illinois.  Since the negligence upon which Plaintiff Brian Gillespie's complaint is based arose within the boundaries of the Central District, venue is proper in that district.  Therefore, venue was proper when Plaintiff Brian Gillespie filed his first complaint in the United States District Court for the Central District, Urbana Division.

II.    Plaintiff's civil action was improperly transferred from the Urbana Division to the Springfield Division.

District courts have the authority to transfer a civil action to any division where the action might have been brought. 28 USCA §1404(a). But section 1404(a) limits district courts in making *sua sponte* transfer orders. The court must consider only the following three factors under section 1404(a): convenience of parties, convenience of the witnesses and the interest of justice. The statute gives a court broad discretion to consider the section 1404(a) factors, but in its ruling a court is limited to only these three factors. *Dairy Industries Supply Ass'n v. La Buy*, 207 F. 2d 554, 558 (7th Cir. 1953).

The authority to transfer to a different division is an altogether different authority than that provided in 28 USCA §1404(c), which allows the district court to transfer a civil action to "any place within the division in which it is pending". Section 1404(c) imposes no limit on the court's discretion to transfer within the same division, whereas the statute in section 1404(a) places a clear limit on the court's discretion to transfer to a different division.

In this case, the original complaint was filed in a proper judicial district and division - the Central District of Illinois, Urbana Division. Nonetheless, the Urbana Division ruled on its own motion to transfer the Plaintiff's civil action to the Springfield Division. The Seventh Circuit has held that "in filing an action, the plaintiff is permitted to choose any proper forum" and that plaintiff's choice should not be lightly set aside. *Dairy Industries Supply Ass'n*, 207 F. 2d 554 at 558. More specifically, the Seventh Circuit has held that a district court should not rule against the plaintiff's choice unless the balance of factors under 28 USCA §1404(a) strongly favors the defendant. *General Portland Cement Co. v. Perry*, 204 F. 2d 316, 319 (7th Cir. 1953).

The Urbana Division's *sua sponte* order transferring Plaintiff Brian Gillespie's civil action to the Springfield Division was improper because that court did not account for any of the

necessary section 1404(a) factors.  The only reason given in its order is that since Lincoln, Illinois is within the boundaries of the Springfield Division, and since the events took place in Lincoln, Springfield is the proper division.  However, under 28 USCA §1391 venue is also proper in the Urbana Division, because it is within the Central District.  So, in order to transfer to another division, the Urbana Division was bound under the Seventh Circuit interpretation of section 1404(a) to determine whether the balance of the three factors favored the defendant.

The Defendants have made no motion to transfer the civil action, nor did they claim any inconvenience or injustice in defending the action in the Urbana Division.  Thus, the Plaintiff's action should not have been transferred away from the Urbana Division to the Springfield Division.

III.     This Honorable Court should find that the balance of §1404(a) factors favors the Plaintiff Brian Gillespie's first choice of venue, and the Honorable Court should transfer the Plaintiff Brian Gillespie's civil action to the Urbana Division according to its authority under 28 USCA §1404(a).

Since the Central District is the proper judicial district for Plaintiff Brian Gillespie's civil action under 28 USCA §1391, Plaintiff Brian Gillespie could have brought his original complaint in either the Urbana Division or the Springfield Division, because either division is within the Central District.

This Honorable Court has authority under 28 USCA §1404(a) to transfer Plaintiff Brian Gillespie's civil action to the Urbana Division.  In ruling on this motion, this Honorable Court must balance the following section 1404(a) factors for change of venue: the convenience of the parties, the convenience of the witnesses, and the interest of justice.

Granting the transfer to the Urbana District would serve the convenience of the parties. First, neither Defendant is a resident within the boundaries of the United States District Court for

the Central District of Illinois.  One Defendant resides in Las Vegas, Nevada and the other

resides in Chicago, Illinois.  Thus, to transfer the action from Springfield to Urbana would

impose no greater inconvenience upon either Defendant.  Second, Plaintiff Brian Gillespie

resides within the boundaries of the Urbana Division, as do his main witnesses.  To transfer the

action from Springfield to Urbana would relieve the Plaintiff Brian Gillespie of the considerable

burden of long distance travel, along with his main witnesses, including his medical provider.

The Seventh Circuit has held that when the defendant faces the same inconvenience in several

available fora the tie is awarded to the plaintiff's choice.  *In re National Presto Industries, Inc.*,

347 F. 3d 662, 665 (7th Cir. 2003).  Here, since no party lives within the boundaries of the

Springfield Division, transferring the civil action to the Urbana Division would serve the

aggregate convenience of the parties.

Transfer to the Urbana Division would not hinder convenience to the witnesses, because

there are no witnesses residing within the boundaries of the Springfield Division.  The only

evidence needed from the boundaries of the Springfield Division is a number documents, which

can be easily transported from Logan Correctional Center.  Furthermore, the interest of justice is

not threatened by transferring Plaintiff Brian Gillespie's civil action to the Urbana Division,

because the Defendants have never objected to venue in the Urbana Division on grounds of

prejudice or otherwise.

Therefore, the only factor under section 1404(a) that raises a question as to the propriety

of transferring from Springfield to Urbana is the convenience to the parties, which favors an

Order in this Honorable Court transferring the action to the Urbana Division.

**Prayer for Relief**

Since the Urbana Division is a proper venue for Plaintiff Brian Gillespie's claim and is a more convenient forum than the Springfield Division, the Plaintiff Brian Gillespie respectfully requests that this Honorable Court transfer the above-entitled civil action to the United States District Court for the Central District of Illinois, Urbana Division.

DATED: _____April 23, 2006_____          Respectfully submitted,

BY: ___s/Marvin Gerstein_____
          Marvin Gerstein Bar Number:  0942162
          Attorney for Plaintiff
          Marvin Gerstein Attorney at Law
          803 South Grove Street
          Urbana, Illinois  61801
          Telephone:  217/367-8734
          Email:  MiraG60@aol.com

*START*START*START*START*START*START*START*START*START*START*START*

5372977-IVERSTINE,WADE R

NUMBER OF REQUESTS IN GROUP:                    1
APPROXIMATE NUMBER OF LINES:                  344
APPROXIMATE NUMBER OF PAGES:                    7
NUMBER OF DOCUMENTS TO BE DELIVERED:            1
DATE AND TIME PRINTING STARTED:     04/20/2006     11:04:19 am (Central)

CLIENT IDENTIFIER:  WADEIVERSTINE
DATE OF REQUEST:  04/20/2006
THE CURRENT DATABASE IS  FEDFIND

204 F.2d 316
204 F.2d 316
**(Cite as: 204 F.2d 316)**
C

Page 1

United States Court of Appeals Seventh Circuit.
GENERAL PORTLAND CEMENT CO.
v.
PERRY.
No. 10785.

May 11, 1953.

Mandamus proceeding brought to compel district judge to transfer personal injury action to another district. The Court of Appeals, Swaim, Circuit Judge, held that there was no such showing that convenience of parties or witnesses or interest of justice, required transfer as would authorize Court of Appeals to say that district judge had abused his discretion in denying transfer.

Petition denied.

West Headnotes

[1] Mandamus 250 ⟷ 44

250 Mandamus
    250II Subjects and Purposes of Relief
        250II(A) Acts and Proceedings of Courts, Judges, and Judicial Officers
            250k44 k. Change of Venue and Transfer of Causes. Most Cited Cases
Power of Court of Appeals to mandate district judge to transfer cause to another district may only be used after appellate court's determination, from consideration of matters presented to district judge and which he considered, or should have considered, that district judge abused his discretion

in failing to order transfer. 28 U.S.C.A. § 1404(a).

[2] Federal Courts 170B ⟷ 103

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in Proper Forum
                170Bk103 k. Discretion of Court. Most Cited Cases
                (Formerly 106k277.1)
District judge is vested with wide area of discretion in determining whether case should be transferred for convenience of parties or witnesses or in interest of justice. 28 U.S.C.A. § 1404(a).

[3] Federal Courts 170B ⟷ 105

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in Proper Forum
                170Bk105 k. Plaintiff's Choice of Forum; Forum Shopping. Most Cited Cases
                (Formerly 106k277.1)
Plaintiff's choice of forum should not be set aside unless balance as to convenience of parties and witnesses is strongly in favor of defendant. 28 U.S.C.A. § 1404(a).

[4] Mandamus 250 ⟷ 168(4)

250 Mandamus

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



204 F.2d 316
**(Cite as: 204 F.2d 316)**

250III Jurisdiction, Proceedings, and Relief
    250k168 Evidence
        250k168(4) k. Weight and Sufficiency.
Most Cited Cases
In mandamus proceeding brought to compel district judge to transfer personal injury action to another district, there was no such showing that convenience of parties or witnesses, or interest of justice, required transfer as would authorize Court of Appeals to say that district judge had abused his discretion in denying transfer. 28 U.S.C.A. § 1404(a).

[5] Mandamus 250 ⬤➡ 172

250 Mandamus
    250III Jurisdiction, Proceedings, and Relief
        250k172 k. Scope of Inquiry and Powers of Court. Most Cited Cases
Affidavit not before district judge when he considered defendant's motion to transfer personal injury action could not be considered by Court of Appeals in determining, in mandamus proceeding, whether district judge had abused his discretion in refusing transfer. 28 U.S.C.A. § 1404(a).

**\*317** John C. Menk, Chicago, Ill., for petitioner.
William C. Wines, Chicago, Ill., for respondent.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.
The petitioner, General Portland Cement Company, seeks in this court a writ of mandamus directing District Judge J. Sam Perry to vacate an order entered by him on December 5, 1952, in the case entitled John H. Stanford v. General Portland Cement Company, Civil Action No. 52-C-1235, now pending in the United States District Court for the Northern District of Illinois, Eastern Division, which order denied the motion by the defendant therein for an order transferring the cause to the United States District Court for the Northern District of Texas, Dallas Division. The petition also asked that Judge Perry be directed to grant said motion and to transfer said cause to the Texas court pursuant to section 1404(a) of Title 28, United States Code Annotated.

In its petition here the petitioner alleges that the action is one for damages for personal injuries which the plaintiff sustained in an accident which occurred at the plant of the Trinity Portland Cement Division of the defendant company in Dallas, Texas, on June 14, 1951; that the plaintiff originally filed the action in the United States District Court for the Northern District of Texas, Fort Worth Division; that the defendant, this petitioner, then filed a motion to have the cause transferred to the Dallas Division in the same District but that the motion was never heard; and that the cause was later dismissed for want of prosecution. The petitioner alleges that later the plaintiff refiled the case in the United States District Court for the Northern District of Illinois, Eastern Division, and that the defendant (petitioner) then filed its motion to transfer the case back down to the Northern District of Texas, Dallas Division.

A copy of the defendant's motion to transfer, a copy of the affidavit in support of that motion and a copy of the counter-affidavit of the plaintiff are attached, as exhibits, to the petition.

The affidavit of the petitioner's attorney states that the action is an action to recover damages for personal injuries sustained by the plaintiff at the defendant's plant in Dallas, Texas; that the plaintiff is a resident of Dallas; that the defendant is licensed to do business in the State of Texas and that its principal place of business in Texas is Dallas; that there are 19 lay witnesses, all having personal knowledge of the facts material to the issues in the law suit and each of whom has knowledge of facts not known by the others, whose presence and testimony are essential to the defense of this case; that 13 of these witnesses live in Dallas and the remainder in close proximity to Dallas; that the plaintiff was hospitalized in Dallas and was attended and treated by doctors residing there; that the testimony of many of the lay witnesses, the testimony of the doctors and the production of hospital and other medical records can be obtained only by subpoena; and that the legal process of the District Court in Illinois does not extend to Dallas, Texas. This affidavit further states that the distance between Chicago, Illinois, and Dallas, Texas, is approximately 986 miles; that the minimum loss of time for each witness attending a trial of this case in Chicago would be five days; that the necessary expense for transportation, maintenance and loss of time for witnesses attending the trial in Chicago would aggregate many thousands of dollars; that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

there will be no facts to be proved by either party by witnesses residing in Chicago; and that the defendant cannot adequately present its defense at a trial of this cause in Chicago because of the above facts.

**\*318** The counter-affidavit made by the plaintiff on November 13, 1952, states that the plaintiff 'is a citizen of the State of Illinois, residing at 2114 N. Cleveland Avenue, Chicago, Illinois, and has so resided for the past thirty days; having moved his residence permanently to Chicago, Illinois, at said time'; that the plaintiff is 60 years of age and has been engaged in manual labor for his entire working life; that from 1919 to 1936 he resided in various places in the States of New Jersey and New York where he was engaged in construction work and was compelled to move about from place to place according to his opportunities for work; that since 1936 and up until the time of the accident his work has required him to be, for periods of approximately one year or more, in the States of New Mexico, Nebraska, Oklahoma, Arkansas and Idaho; that at many times during the past 15 years he has resided in Chicago for brief periods of time during which times he became acquainted with Bruneau E. Heirich, whom plaintiff chose as his attorney to handle this case.

In his counter-affidavit the plaintiff stated further that the action which he formerly filed in Fort Worth was dismissed on plaintiffS instructions and with his consent because his attorney, Mr. Heirich, was unable to prosecute and try the case in the State of Texas, either in Fort Worth or in Dallas, because of the combined actions of the Bar Association of the State of Texas and the District Court Judges in refusing to permit attorneys from other states to try personal injury suits in the Texas courts.    The affidavit of the plaintiff further alleges that the location of the principal office of the defendant and the homes of its officers are in Chicago; that the affiant is without funds, is destitute and has no employment; and that it would be a great hardship on him if the cause is removed from the Northern District of Illinois.  The plaintiff further stated that at the time of the accident in question there were no eye witnesses in the immediate vicinity where the accident occurred, that there were no attendants or witnesses on the remotely controlled conveyor car which struck him and that it was a matter of some minutes before anyone came to his assistance after

the accident happened.

District Judge Perry, on November 18, 1952, held a hearing on the defendant's motion to transfer the cause back to Texas.  This hearing consisted only of arguments by counsel for the defendant and for the plaintiff.   No evidence was introduced by either party but Judge Perry had before him the pleadings filed by the parties in the District Court, including the motion to transfer with the attached affidavit of the attorney for the defendant and the affidavit of the plaintiff.  Judge Perry was also furnished briefs by counsel for the parties.

[1] If this court has the power to mandate the District Judge in a case such as this, which some of the decisions seem to deny, such power may only be used after our determination, from a consideration of the matters which were presented to him and which he considered or should have considered, that the District Judge abused his discretion in failing to order the transfer.

The statute authorizing such a transfer provides that:

'For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'  28 U.S.C.A. § 1404(a).

[2] Admittedly the action at the time it was brought could have been filed in the Northern District of Texas, Dallas Division, where at that time the plaintiff was a resident and the defendant had its principal place of business in Texas.  The petitioner admits, as indeed it must, that 'the District Judge is unquestionably vested with a wide area of discretion in determining whether or not a case should be transferred under the provisions of Section 1404(a).' But the petitioner insists that in the instant case the action of Judge Perry in denying the transfer amounted to an abuse of his discretion.

In Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329, a petition for a writ of mandamus to require a District Judge to grant a transfer pursuant to section 1404(a) was refused.**\*319**   The court there, after pointing out, 182 F.2d at page 330, that while 'We recognize that the dividing line is by no means entirely clear between the power of this court and its lack of power to issue the writ', proceeded to consider the question of whether the District Judge abused his

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



204 F.2d 316
(Cite as: 204 F.2d 316)

discretion. The court said that it considered these words, used in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, to the effect that 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed', as still having vitality. In that case Judge Frank thought that the Court of Appeals, recognizing that the District Judge must guess, 'should accept his guess unless it is too wild.' 182 F.2d at page 332, Judge Hand concurred solely on the grounds that he was 'not persuaded that the balance of convenience is strong enough to declare 'clearly erroneous' the finding of the district judge that the defendants have not overcome the handicap of Sec. 15 (giving the plaintiff the choice of forum).' Judge Swan, on the other hand, agreed to the denial of the petition on the ground that the court lacked the power to grant it.

Can we say in the instant case that the defendant has given us sufficient grounds for saying that Judge Perry's denial of the transfer was so 'clearly erroneous' as to amount to an abuse of his discretion?

[3] All of the decisions we have found on this question recognize the rule that the plaintiff's choice of forum should not be set aside unless the balance as to the convenience of the parties and the witnesses is strongly in favor of the defendant. For example see Nicol v. Koscinski, 6 Cir., 188 F.2d 537; International Union of Electrical Radio & Machine Workers, C.I.O. v. United Electrical, Radio & Machine Workers of America, 6 Cir., 192 F.2d 847, 851.

In the affidavit of the defendant's attorney supporting the motion for transfer he says that he has 19 witnesses from Texas which he will need and will use in the trial of the case and that there are no witnesses residing in Chicago. On the other hand, the plaintiff's affidavit opposing the transfer states that there were no eye witnesses in the vicinity at the time the accident occurred and that there were no attendants or witnesses on the remotely controlled conveyor car which struck him and caused his injuries. Although the defendant's attorney said at the hearing before Judge Perry that he had the written statements of his 19 witnesses with him, he neither introduced the statements into evidence, gave the names of the witnesses nor indicated what their testimony would be. At the close of the hearing the

defendant's attorney did hand to Judge Perry some papers which he said were the statements of his witnesses but, according to Judge Perry's answer filed in this court, he (Judge Perry) decided as he started to read one of the statements that it would be unfair to the plaintiff to read the statements and possibly be influenced by them when they were not a matter of record and their contents were not known to the plaintiff.

[4] The question of convenience of the witnesses was one of the vital issues presented by the defendant's motion to transfer. In our opinion the defendant failed to sufficiently show the necessity for the testimony of his witnesses. In Goodman v. Southern Ry. Co., D.C.S.D.N.Y., 99 F.Supp. 852, the defendant, in its affidavit attached to a motion for transfer of the cause from a District Court in New York to a District Court in South Carolina, listed the names of 20 witnesses who were residents of South Carolina who would be used on the trial and opposite their names gave a 'capsule description of the part they might play in the case.' In opposition the plaintiff alleged that there were not more than four eye witnesses to the accident, that she had several witnesses living in New York, where the action was brought, and that the defendant was better able to bear the expense of transportation of witnesses than she was. The court denied the transfer on the ground that the defendant had not given sufficient information as to what the witnesses would testify and as to how essential they all were to the trial and had, therefore, failed to sustain its burden of proof.

Again in Jenkins v. Wilson Freight Forwarding Co., D.C.S.D.N.Y., 104 F.Supp. 422, at page 424, in an opinion denying a *320 transfer requested under Section 1404(a), the court said:

'The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. The emphasis must be on this rather than on numbers.'

In the pleadings which the defendant filed in this court it emphasized the fact that the plaintiff's injuries had been treated in a Dallas hospital by doctors who were residents of Dallas and that the testimony of these doctors and the hospital records were necessary to dispute the injuries claimed by the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

204 F.2d 316
(Cite as: 204 F.2d 316)

plaintiff in his complaint. Since we do not have the plaintiff's complaint before us to show what injuries he claimed, and since we are not apprised of what the doctors would say in their testimony or what the hospital records would show, we are in no position to pass on that question.

So in the instant case we think that the affidavit of the plaintiff, stating that there were no eye witnesses to the accident and that he was then a resident of Chicago, considered together with the failure of the defendant to give the names of its witnesses, to indicate what their testimony would be, to show how vital that testimony would be to the defense of the case and to show why the depositions of these witnesses could not be used successfully, furnished a reasonable basis for Judge Perry to find that the defendant failed to sustain its burden of showing that the balance as to the convenience of the witnesses was so strongly in favor of the defendant as to overcome the weight to be given to the plaintiff's choice of forum.

In its reply brief the defendant says that Judge Perry at no time ever requested the defendant to introduce the statements of its witness, or a summary thereof, into evidence. While that is true, attorneys for the plaintiff in the hearing in the District Court complained that without the statements being in the record, the plaintiff would have no basis for appeal if Judge Perry decided against the plaintiff on the motion. After this discussion Judge Perry properly said: 'I never try to tell a lawyer how he should try his case.'

As to the convenience of the parties, we think it even more clear that the defendant did not sustain its burden of proof. The defendant showed that a trial of the case in Chicago would be much more expensive for it than one in Dallas, and that if it won the case it would probably be impossible to recover such expenses. As against this, the plaintiff stated in his affidavit that he was a resident of Chicago, that he was without funds, was destitute, had no employment and that it would be a great hardship on him to transfer the case to Dallas. We can understand why the District Judge under these facts might have considered that the balance of convenience, as between the parties, was in favor of the plaintiff, instead of the defendant, and that the transfer of the cause to Texas might well have made it impossible for the plaintiff to prosecute his cause

of action for damages for his admittedly serious injuries. Such a denial of the plaintiff's cause of action could not be 'in the interest of justice.'

[5] During the hearing before Judge Perry the defendant questioned the good faith of the plaintiff's having moved to Chicago, and charged that the plaintiff at the time of the hearing in the District Court had only been in Chicago about a week. Since this matter has been before this court the defendant sought to file, as a part of the record here, an additional affidavit which purported to show the results of a further investigation recently conducted in Texas concerning the present residence of the plaintiff. Such an affidavit, which was not before the District Judge when he considered the motion to transfer, could, of course, not be considered by this court in determining whether the District Judge abused his discretion.

The petition for writ of mandamus is

Denied.

C.A.7 1953.
General Portland Cement Co. v. Perry
204 F.2d 316

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5372977 - IVERSTINE,WADE R
*END*END*END*END*END*END*END*END*



*START*START*START*START*START*START*START*START*START*START*START*

## 5372977-IVERSTINE,WADE R

NUMBER OF REQUESTS IN GROUP:            1
APPROXIMATE NUMBER OF LINES:            219
APPROXIMATE NUMBER OF PAGES:            4
NUMBER OF DOCUMENTS TO BE DELIVERED:    1
DATE AND TIME PRINTING STARTED:    04/20/2006    11:04:23 am (Central)

CLIENT IDENTIFIER:  WADEIVERSTINE
DATE OF REQUEST:  04/20/2006
THE CURRENT DATABASE IS  FEDFIND

347 F.3d 662                                                    Page    1
347 F.3d 662, Fed. Sec. L. Rep. P 92,601
**(Cite as: 347 F.3d 662)**
H

Briefs and Other Related Documents

United States Court of Appeals,Seventh Circuit.
In re:  NATIONAL PRESTO INDUSTRIES, INC.,
Petitioner.
No. 03-1873.

Submitted April 23, 2003.
Decided Oct. 21, 2003.

Securities and Exchange Commission (SEC) brought enforcement action under Investment Company Act against unregistered investment company. The United States District Court for the Northern District of Illinois, Charles R. Norgle, Sr., J., denied company's motion for change in venue. Company petitioned for writ of mandamus. The Court of Appeals, Posner, Circuit Judge, held that: (1) requirement of irreparable harm was fulfilled, and (2) balance of convenience was not so far askew as to justify extraordinary relief.

Petition denied.

West Headnotes

[1] Mandamus 250 ⟜ 4(4)

250 Mandamus
    250I Nature and Grounds in General
        250k4 Remedy by Appeal or Writ of Error
            250k4(4) k. Modification or Vacation of Judgment or Order. Most Cited Cases

Mandamus 250 ⟜ 28

250 Mandamus
    250II Subjects and Purposes of Relief
        250II(A) Acts and Proceedings of Courts, Judges, and Judicial Officers
            250k28 k. Matters of Discretion. Most Cited Cases
A writ of mandamus is granted only upon a demonstration that the district court so far exceeded the proper bounds of judicial discretion as to be legitimately considered usurpative in character or in violation of a clear and indisputable legal right, or at the very least, patently erroneous, and that the injury caused by the challenged order cannot be repaired by any means other than mandamus, such as by waiting till the appeal from the final judgment.

[2] Mandamus 250 ⟜ 4(4)

250 Mandamus
    250I Nature and Grounds in General
        250k4 Remedy by Appeal or Writ of Error
            250k4(4) k. Modification or Vacation of Judgment or Order. Most Cited Cases
Requirement of irreparable harm was fulfilled on petition for writ of mandamus, for district court's allegedly improper failure to transfer venue, where party did not have adequate remedy by way of appeal from adverse final judgment because it would not have been able to show that it would have won case had it been tried in convenient forum.  28 U.S.C.A. § 1404(a).

[3] Federal Courts 170B ⟜ 105

170B Federal Courts

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



347 F.3d 662
(Cite as: 347 F.3d 662)

170BII Venue
   170BII(B) Change of Venue
     170BII(B)1 In General; Venue Laid in Proper Forum
      170Bk105 k. Plaintiff's Choice of Forum; Forum Shopping. Most Cited Cases
Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. 28 U.S.C.A. § 1404(a).

[4] Mandamus 250 &#8734; 44

250 Mandamus
   250II Subjects and Purposes of Relief
     250II(A) Acts and Proceedings of Courts, Judges, and Judicial Officers
      250k44 k. Change of Venue and Transfer of Causes. Most Cited Cases
Writ of mandamus did not issue, for district court's allegedly improper failure to transfer venue, although party demonstrated that balance of convenience favored alternate forum; venue was permissible in current forum, and balance of convenience was not so far askew as to justify extraordinary relief. 28 U.S.C.A. § 1404(a).

[5] Federal Courts 170B &#8734; 101

170B Federal Courts
   170BII Venue
     170BII(B) Change of Venue
     170BII(B)1 In General; Venue Laid in Proper Forum
      170Bk101 k. In General; Convenience and Interest of Justice. Most Cited Cases

Federal Courts 170B &#8734; 105

170B Federal Courts
   170BII Venue
     170BII(B) Change of Venue
     170BII(B)1 In General; Venue Laid in Proper Forum
      170Bk105 k. Plaintiff's Choice of Forum; Forum Shopping. Most Cited Cases
When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience, and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue, the tie is awarded to the plaintiff. 28 U.S.C.A. § 1404(a).

**\*663** James G. Hunter, Jr. (submitted a brief), Latham & Watkins, Chicago, IL, for Petitioner.
Kathryn A. Pyszka (submitted a brief), Chicago, IL, for Party-in-Interest Securitites and exchange Commission.

Before BAUER, POSNER, and WILLIAMS, Circuit Judges.
POSNER, Circuit Judge.
The Securities and Exchange Commission has sued National Presto Industries in the federal district court in Chicago, charging that Presto has been operating as an unregistered investment company in violation of Section 7(a) of the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 *et seq.* Presto asked the court to transfer the case to the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a), which authorizes changes of venue "for the convenience of parties and witnesses, in the interest of justice." The district judge denied the motion, emphasizing that the Northern District of Illinois was the venue most convenient for the SEC and that a plaintiff's choice of forum is entitled to considerable deference. An order granting or denying a motion under Rule 1404(a) is not a final order, but Presto has filed a petition for a writ of mandamus asking us to direct the district court to transfer the action to the Western District of Wisconsin. The petition raises the question, on which there are no cases in this court and few elsewhere, of the weight to be given a government agency's appeal to convenience in resisting a motion for change of venue.

[1][2] Presto faces an uphill fight in seeking mandamus, which is granted only upon a demonstration that the district court "so far exceeded the proper bounds of judicial discretion as to be legitimately considered ursurpative in character or in violation of a clear and indisputable legal right, or at the very least, patently erroneous" and that the injury caused by the challenged order cannot be repaired by any means other than mandamus, such as by waiting till the appeal from the final judgment. *In re Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293, 1295 (7th Cir.1995); *In re Sandahl,* 980 F.2d 1118, 1119 (7th Cir.1992). The requirement of irreparable harm is fulfilled in this case. Granted that unrecoverable costs of litigation, such as attorneys' fees, do not count as irreparable harm, *FTC v. Standard Oil Co.,* 449 U.S. 232, 244, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980); *Renegotiation*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); *PaineWebber Inc. v. Farnam,* 843 F.2d 1050 (7th Cir.1988)-otherwise every interlocutory ruling in a litigation would be subject to immediate appellate review via mandamus-Presto would not have an adequate remedy for an improper failure to transfer the case by way of an appeal from an adverse final judgment because it would not be able to show that it would have won the case had it been tried in a convenient forum.

[3][4] Whether the denial of the motion to transfer was patently erroneous, or indeed erroneous at all, is much more doubtful,*664 especially since, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ; see also *Zelinski v. Columbia 300, Inc.,* 335 F.3d 633, 643 (7th Cir.2003); *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 70 (2d Cir.2003). Rarely, however, is not never. See, e.g., *Chicago Rock Island & Pac. R.R. v. Igoe,* 220 F.2d 299, 305 (7th Cir.1955); *In re Horseshoe Entertainment,* 337 F.3d 429, 434-35 (5th Cir.2003) ; cf. *Hustler Magazine, Inc. v. United States District Court,* 790 F.2d 69, 73 (10th Cir.1986).

According to Presto, the only relation between the Northern District of Illinois and the SEC's lawsuit is that it was the agency's Midwest Regional Office, which is located in Chicago, that conducted the investigation leading up to the suit. This is a bit of an exaggeration, since Presto operates throughout the country and at least two investors alleged to have been harmed by its alleged violation of the Investment Company Act are located in Chicago. But this is just to say that Chicago is one permissible venue for the suit; it may not be the most convenient, or the most just. A number of Presto's potential witnesses are located in the Western District of Wisconsin, which is where Presto's headquarters is located (in the city of Eau Claire), while it appears that the only persons who would be inconvenienced by having to litigate in that district rather than in Chicago would be members of the SEC's Midwest Regional Office staff. Moreover, all Presto's potential witnesses, some of whom may be reluctant to become involved in the litigation, are within the subpoena power of the federal district for the Western District of Wisconsin, but are out of

subpoena range of the district court in Chicago. (Although defendants in federal securities cases, including cases under the Investment Company Act, can be subpoenaed wherever located, see 15 U.S.C. §§ 77v, 78aa, 80a-49, witnesses are subject to the usual 100-mile limitation. See *Fey v. Walston & Co., Inc.,* 493 F.2d 1036, 1053 n. 21 (7th Cir.1974); *Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.,* 771 F.2d 5, 10 (1st Cir.1985).) And the original documents in the case are located in the Western District of Wisconsin as well, at Presto's headquarters. The Western District of Wisconsin also has a lighter docket than the Northern District of Illinois, a factor relevant to the "interest of justice" criterion in section 1404(a). So really the only thing on the side of a Chicago venue is the convenience of the SEC, which is in turn a function of its decision on where to locate its regional offices. The reason that Presto was not investigated by the SEC's office in Wisconsin is that the SEC has no office in Wisconsin.

We can find only two reported appellate cases (both involving the SEC, just like this case, and neither recent) on the weight if any that is to be given to a federal agency's convenience in a change of venue analysis under section 1404(a). See *SEC v. Savoy Industries, Inc.,* 587 F.2d 1149, 1155 (D.C.Cir.1978); *Golconda Mining Corp. v. Herlands,* 365 F.2d 856 (2d Cir.1966). Given the vast resources of the federal government, it might seem that the government would rarely if ever be seriously inconvenienced by being compelled to litigate in a district more convenient to the defendant. But such a suggestion would be unrealistic. Federal agencies have limited resources, and the SEC in particular is often outgunned by the affluent defendants that it sues. The SEC cannot afford a regional office in every state. It has only eleven regional offices and the only one in the midwest is the Chicago office, which is much closer to *665 the Western District of Wisconsin than the next closest regional office, which is the one in Atlanta. It is not as if the SEC were trying to make Presto defend in Miami, where another of its regional offices is located.

[5] When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



347 F.3d 662
**(Cite as: 347 F.3d 662)**

the tie is awarded to the plaintiff, as the cases cited earlier make clear.  See also *Wyndham Associates v. Bintliff,* 398 F.2d 614, 620-21 (2d Cir.1968).  We think this principle should hold even when one of the parties is a federal agency that will suffer inconvenience if forced to litigate in the defendant's district because the agency or its field office is in another district.  When government lawyers and investigators incur time and travel costs to litigate in a remote forum, the burden falls on the taxpayer, who finances the federal government and who is no less worthy of the protection of the law than corporate officers, shareholders, and employees.

We doubt that the balance of convenience actually favors the SEC or even that we have a tie.  Given the location of documents, the limited subpoena power of the Northern District of Illinois with regard to Presto's potential witnesses, and the lighter docket in the Western District of Wisconsin, we suspect that the balance favors the Western District.  But the balance is not so far askew as to justify the extraordinary relief sought by Presto.

C.A.7 (Ill.),2003.
In re National Presto Industries, Inc.
347 F.3d 662, Fed. Sec. L. Rep. P 92,601

Briefs and Other Related Documents (Back to top)

. 03-1873 (Docket) (Apr. 03, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.
5372977 - IVERSTINE,WADE R
*END*END*END*END*END*END*END*END*

*START*START*START*START*START*START*START*START*START*START*START*

5372977-IVERSTINE,WADE R

NUMBER OF REQUESTS IN GROUP:              1
APPROXIMATE NUMBER OF LINES:            333
APPROXIMATE NUMBER OF PAGES:              7
NUMBER OF DOCUMENTS TO BE DELIVERED:      1
DATE AND TIME PRINTING STARTED:   04/20/2006    11:02:14 am (Central)

CLIENT IDENTIFIER:  WADE IVERSTINE
DATE OF REQUEST:  04/20/2006
THE CURRENT DATABASE IS  FEDFIND

207 F.2d 554
207 F.2d 554
**(Cite as: 207 F.2d 554)**
**c**

Page   1

United States Court of Appeals Seventh Circuit.
**DAIRY INDUSTRIES SUPPLY ASS'N**
v.
**LA BUY.**
No. 10873.

Nov. 4, 1953.

Trade association and others brought mandamus proceeding against Judge of the United States District Court for the Northern District of Illinois. The Court of Appeals, Swaim, Circuit Judge, held that association was transacting business in Chicago within the meaning of the Clayton Act, so that venue of anti-trust action was in District Court for Northern District of Illinois, but that District Court erred in denying motion for a change of venue under statute providing that for convenience of parties and witnesses, in interest of justice, District Court may transfer any civil action to any other district or division where it might have been brought, merely because of failure of defendants to show that continuance of action in District Court for Northern District of Illinois would be oppressive, harassing, and vexatious to defendants.

Judgment affirmed in part and reversed in part, and cause remanded with instructions.

West Headnotes

[1] Monopolies 265 ⇐ 28(3)

265 Monopolies
    265II Trusts and Other Combinations in Restraint of Trade
        265k28 Actions for Damages by Combinations or Monopolies
            265k28(3) k. Jurisdiction and Venue. Most Cited Cases
In determining whether trade association was "transacting business" in Chicago within meaning of Clayton Act, so that venue of anti-trust action was in federal District Court for Northern District of Illinois, court could properly consider statements made by association, before it held exposition in Chicago, that $30,000 to $40,000 would be expended by association for installations to make place of exposition in Chicago a suitable place for exposition, though association contended that statements were merely exuberant advertising. Sherman Anti-Trust Act, § 1, as amended, 15 U.S.C.A. § 1; Clayton Act, §§ 4, 12, 15 U.S.C.A. §§ 15, 22.

[2] Monopolies 265 ⇐ 28(3)

265 Monopolies
    265II Trusts and Other Combinations in Restraint of Trade
        265k28 Actions for Damages by Combinations or Monopolies
            265k28(3) k. Jurisdiction and Venue. Most Cited Cases
Where practically entire business of trade association was being transacted in Chicago while association was holding its exposition there, and almost all of its staff were present at exposition, association was "transacting business" in Chicago within meaning of the Clayton Act, so that venue of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



anti-trust action was in federal District Court for Northern District of Illinois. Sherman Anti-Trust Act, § 1, as amended, 15 U.S.C.A. § 1; Clayton Act, §§ 4, 12, 15 U.S.C.A. §§ 15, 22.

[3] Federal Courts 170B ☞ 105

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General;   Venue Laid in Proper Forum
                170Bk105 k. Plaintiff's Choice of Forum; Forum Shopping. Most Cited Cases
        (Formerly 106k277.1)
In applying federal statute providing that for convenience of parties, and witnesses, in interest of justice, district court may transfer any civil action to any other district or division where it might have been brought, court should bear in mind that in filing action, plaintiff is permitted to choose any proper forum and that plaintiff's choice should not be lightly set aside. 28 U.S.C.A. 1404(a).

[4] Federal Courts 170B ☞ 103

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General;   Venue Laid in Proper Forum
                170Bk103 k. Discretion of Court. Most Cited Cases
        (Formerly 106k277.1)

Federal Courts 170B ☞ 104

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General;   Venue Laid in Proper Forum
                170Bk104 k. Matters Considered. Most Cited Cases
        (Formerly 106k277.1)
In acting on a motion for change of venue under federal statute providing that for convenience of parties and witnesses, in interest of justice, District Court may transfer any civil action to any other district or division where it might have been brought, court has broad discretion, but, in exercising such discretion, court is limited in

consideration to the three factors specifically mentioned in the statute and may not properly be governed in its decision by any other factor or factors. 28 U.S.C.A. 1404(a).

[5] Federal Courts 170B ☞ 104

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General;   Venue Laid in Proper Forum
                170Bk104 k. Matters Considered. Most Cited Cases
        (Formerly 106k277.1)
On motion for change of venue under statutory provision that for convenience of parties and witnesses, in interest of justice, district court may transfer any civil action to any other district or division where it might have been brought, federal District Court erred in denying the motion because of failure of defendants to show that continuance of action in forum where it was brought, would be oppressive, harassing, and vexatious to defendants. 28 U.S.C.A. 1404(a).

**\*555** Walter J. Cummings, Jr., H. Blair White, Chicago, Ill., for petitioner.
Henry S. Blum, Bernard G. Sang, Vincent J. Carney, Chicago, Ill., for respondent.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.
On September 20, 1952, Maryland Baking Company and Northwest Cone Company, corporations organized under the laws of the State of Maryland and having their principal places of business in Baltimore, Maryland, and Chicago, Illinois, respectively, commenced an action in the United States District Court for the Northern District of Illinois against Dairy Industries Supply Association hereinafter referred to as DISA, a corporation organized under the laws of the State of New York and having its principal place of business in Washington, D.C., and against its officers and directors, both in their official capacities and as individuals. The complaint alleged that the defendants combined and conspired together to bar and prevent Maryland Baking Company from exhibiting its wares and to prevent its wholly-owned

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

207 F.2d 554
**(Cite as: 207 F.2d 554)**

subsidiary, Northwest Cone Company, from furnishing its products to the exhibitors at the National Dairy Industries Exposition which DISA held on Navy Pier in Chicago, commencing September 22, 1952. The complaint alleged that this action by the defendants was in violation of the Sherman Anti-Trust Act, 26 Stat. 209, 15 U.S.C.A. § 1, and that plaintiffs brought this action under the Clayton Anti-trust Act, Sec. 4, 38 Stat. 731, 15 U.S.C.A. § 15. The complaint asked that the defendants be enjoined from preventing the plaintiff Maryland Baking Company from exhibiting its wares at the Chicago exposition and from preventing Northwest Cone Company from furnishing its products to the exhibitors at said exposition and also asked for a judgment for treble damages for the injuries sustained by plaintiffs by reason of the alleged unlawful acts of the defendants in excluding the two plaintiffs from participating in said exposition.

On October 30, 1952, DISA and the individual defendants who had been served with summons in the action filed a motion to transfer the action to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a). On the same date DISA filed its motion to quash the service of summons made upon it in Chicago during the convention and the alias summons served upon it thereafter in Washington, D.C. In this latter motion DISA also moved to dismiss the action for want of venue in the Northern District of Illinois. The defendants filed four affidavits made by Robert Everett, executive vice president of the corporate defendant, in support of these motions. The plaintiffs opposed these motions and filed, in opposition to the motions, the affidavit of Henry Shapiro who was the president of Maryland Baking Company and the secretary of Northwest Cone Company.

After considering the pleadings, motions, affidavits, arguments and briefs of the parties, the District Court was of the opinion that the corporate defendant, *556 DISA, 'was doing business here to such an extent and in such manner that actual presence was established and it was 'found' here at the time of the service of summons on September 24, 1952.' The District Court also found that the defendants had failed to sustain their burden to prove that for the convenience of the parties and witnesses, and in the interest of justice, the District

Court should transfer the action to the District of Columbia, pursuant to 28 U.S.C. § 1404(a).

The District Court thereupon entered an order overruling the defendants' motion to quash the service of summons and denying their motion to transfer the action to the District Court for the District of Columbia.

The defendants then filed in this court a petition for a writ of mandamus directing the District Court to vacate and set aside its order denying the petition to transfer and directing the transfer of the action or, in the alternative, directing that the action be dismissed for want of venue in the Northern District of Illinois.

Section 12 of the Clayton Act, 15 U.S.C.A. § 22, provides:

'Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.' (Emphasis added.)'

Thus, as the Supreme Court said in United States v. Scophony Corporation, 333 U.S. 795, 802, 68 S.Ct. 855, 859, 92 L.Ed. 1091:

'Section 12 of the Clayton Act has two functions, first, to fix the venue for antitrust suits against corporations; second, to determine where process in such suits may be served. Venue may be had 'not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business.' And all process may be served 'in the district of which it is an inhabitant, or wherever it may be found.''

The court also pointed out that Sec. 12 of the Clayton Act was an enlargement over similar prior statutes which only provided for such actions in districts where the corporation 'resides or is found.' 28 Stat. 570, Sec. 77 and 26 Stat. 210, Sec. 7.

In the Scophony case the court said, 33 U.S.at page 807, 68 S.Ct.at page 862, that under Sec. 12 of the Clayton Act, 'the practical, everyday business of commercial concept of doing or carrying on business

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



207 F.2d 554
(Cite as: 207 F.2d 554)

'of any substantial character' became the test of venue.' Under Sec. 12, as so interpreted, we think the corporate defendant in the instant case was transacting business in the Northern District of Illinois when the action against it was commenced.

DISA is described by Roberts Everett, its executive vice president as 'a trade association comprising some four hundred members- persons, firms and corporations- which originate, make or distribute the essential manufacturing and marketing machinery, equipment, materials, supplies and ingredients or supply basic services for milk processing and dairy product manufacturing industries of the United States and Canada.' Mr. Everett listed fourteen different activities and services in which DISA is engaged, including 'staging biannual Dairy Industries Exposition,' such as the one stated in Chicago and in connection with which the present controversy arose.

Henry Shapiro, the vice president of Maryland Baking Company and secretary of Northwest Cone Company, in the affidavit which he filed in opposition to the motions of the defendants, said that substantially every important firm in the United States engaged in the manufacture of, or dealing in equipment or supplies for manufacturers of, dairy products, is a member of DISA; that the *557 majority of the members consider that the most important work of DISA is the holding of the biannual Dairy Industries Exposition; that these expositions appeal to prospective purchasers of equipment and that a large proportion of the persons attending these expositions are prospective customers for the equipment exhibited by the members of the organization; that for the Chicago exposition DISA leased from the City of Chicago 300,805 square feet of space in the north and south exhibition halls of Navy Pier for a term extending from September 2, 1952 to October 6, 1952, inclusive; that under the terms of the lease DISA was to expend the money necessary for the installation on Navy Pier of a three inch supply of water and two inch secondary distribution thereof; and that DISA was to have credit on the rental it was to pay for the cost of this installation.

In his affidavit Mr. Shapiro quoted the following statement of R. D. Britton, the chairman of the exposition committee, which had been sent out by committee to the members of DISA:

'In renting the Navy Pier, we are renting a bare hall, literally speaking, as a great many of the facilities that went along with the Atlantic City Convention Hall are lacking at the Navy Pier. It is going to be the responsibility of our staff, of our Committee members and all of you folks who are members of DISA, to help provide these facilities. DISA is preparing to invest from $30,000 to $40,000 more than it had done in recent Show years to adapt the Pier's features to your Dairy Industries Exposition use.'

Mr. Shapiro, in his affidavit, further said that on August 18, 1952, DISA advised its membership that a part of its staff would open a Dairy Industries Exposition Management Office on Navy Pier and that before the show opened on September 2nd, 'almost the whole staff of DISA would be located at the Navy Pier'; that the members were instructed that after September 5, 1952, they should address all mail, with certain minor exceptions, to DISA, Navy Pier, Chicago; that prior to the holding of the Chicago Exposition, DISA held its 33rd annual corporate meeting in Chicago at the Congress Hotel; and that in connection with this annual meeting the members were taken by chartered buses for a 'Preview of Navy Pier Tour' and the members drew lots to determine the location of their exhibits at the Navy Pier exposition.

DISA attempts to minimize the effect of these statements of its officers concerning the Chicago exposition which it published and sent to its members prior to the exposition. DISA now says that the $30,000 to $40,000 expenditures which it said would be expended for installations to make Navy Pier a suitable place for the exposition were 'merely predicted' and 'represented simply a promotional effort by DISA to encourage the participation of its member companies as exhibitors in the exposition.' In its reply brief in this court these statements, which DISA now says were exaggerated, are characterized as 'exuberant advertising, rather than a factual description.'

[1][2] Nevertheless, in spite of DISA's present explanations of its earlier statements, we think that the District Court could properly consider these pre-exhibition statements as evidence tending to show the importance of this biannual exposition and as tending to show that during the month of September 1952, at the time this action was filed by the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

207 F.2d 554
**(Cite as: 207 F.2d 554)**

Page 5

plaintiff and summons was served on DISA, practically the entire business of DISA was being transacted in Chicago and that almost all of its staff were there present and engaged in conducting such business. We think, therefore, that the District Court also correctly determined that DISA was 'found' there at the time of the summons on it in Chicago and that such service was, therefore, valid.

[3] Title 28 U.S.C. § 1404(a) names only three factors which a District Court Judge is to consider in determining his *558 action on a motion for transfer under this section, namely, the convenience of the parties, the convenience of the witnesses and the interest of justice. In considering these three factors the court should, of course, bear in mind that in filing an action the plaintiff is permitted to choose any proper forum and that the plaintiff's choice should not lightly be set aside. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055.

[4] In acting on such a motion the District Judge has a broad discretion, but in exercising this discretion he is limited in his consideration to the three factors specifically mentioned in Sec. 1404(a) and he may not properly be governed in his decision by any other factor or factors.

In the memorandum opinion of the District Court in the instant case we find the following statement in reference to the defendants' motion to transfer the action to the District of Columbia, pursuant to 28 U.S.C. § 1404(a):

'The choice of venue is to be determined by the preponderance of the facts and the burden is on the moving party. Before the court is warranted in depriving plaintiff of its right to proceed in a proper forum it must appear that continuance of the action in this forum would be oppressive, harassing and vexatious to the defendant. From the affidavits and counter-affidavits and briefs filed in connection with this motion, the court is of the opinion that since the files and witnesses for the plaintiffs are in this district it would be as inconvenient for the plaintiff to proceed with this cause in the District of Columbia as it would be for the defendant to defend the action in this district. Balancing the relative inconvenience of the parties and the fact that there is no indication the filing of the suit here was vexatious or harassing to the defendant, the court is

of the opinion the motion to transfer the suit to the District Court of Columbia should be denied.' (Our emphasis.)

[5] From this language it seems clear that the District Judge in the instant case considered as necessary to an order to transfer tests which are not required by Sec. 1404(a). The facts in such a case might be such as to clearly indicate that considering the convenience of the parties and witnesses and in the interest of justice an action should be transferred without the record disclosing any indication that the prosecution of the action in the forum where filed would be 'oppressive, harassing or vexatious' to the defendant and without any indication that the plaintiff, by its choice of forum had intended to oppress, harass or vex the defendant.

That part of the judgment below denying the motion to dismiss or transfer for want of venue is Affirmed. The part of the judgment denying a transfer under Title 28 U.S.C. § 1404(a) is Reversed, and the cause is remanded with instructions to the District Court to reconsider the motion and to redetermine its action thereon on the basis of the proper factors to be considered as indicated above in this opinion.

C.A.7 1953.
Dairy Industries Supply Ass'n v. La Buy
207 F.2d 554

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.
5372977 - IVERSTINE,WADE R
*END*END*END*END*END*END*END*END*END*

